# EXHIBIT D

DELIVERED

6 / 30 / 25

BY: BK    PS 6332

ATX PROCESS, LLC

CITATION

THE STATE OF TEXAS

CAUSE NO. D-1-GN-25-004221

JANE DOE

, PLAINTIFF(S)

vs.

GARY MCCREIGHT D/B/A SMOKING CATERPILLAR; SMOKING CATERPILLAR; FRESH FARMS E-
LIQUID, LLC

, DEFENDANT(S)

TO:    FRESH FARMS E-LIQUID, LLC
       BY SERVING ITS REGISTERED AGENT ANTHONY DEVINCENTIS
       151 KALMUS DRIVE L3
       COSTA MESA CA  92626

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk
who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served
this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk,
you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made
no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFF'S ORIGINAL PETITION** in the above styled and numbered cause, which was filed on **JUNE
12, 2025** in the **353RD DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **JUNE 16, 2025**

REQUESTED BY:
**BRANTLEY ROSS PRINGLE , JR.**
**4700 MUELLER BLVD., STE. 200**
**AUSTIN, TX  78723**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

Ruben Tamez, Deputy

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in person, a true copy of this citation together with
the **PLAINTIFF'S ORIGINAL PETITION** accompanying pleading, having first attached such copy of such citation to such copy of
pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS
D-1-GN-25-004221

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

**SERVICE FEE NOT PAID**

D-1-GN-25-004221

CAUSE NO. _____

JANE DOE § IN THE DISTRICT COURT
§ 353RD, DISTRICT COURT
V. § _____ JUDICIAL DISTRICT
§
GARY MCCREIGHT, D/B/A §
THE SMOKING CATERPILLAR AND §
FRESH FARMS E-LIQUID, LLC § TRAVIS COUNTY, TEXAS

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jane Doe, Plaintiff herein, complaining of Gary James McCreight d/b/a Smoking Caterpillar and Fresh Farms E-Liquid, LLC, Defendants, and files this her Plaintiff's Original Petition and in support thereof would respectfully show unto the Court and Jury as follows:

### I. DISCOVERY LEVEL

1.    Plaintiff intends to conduct discovery under a Level 3 Discovery Control Plan as described in TRCP 190.4.

### II. TRCP 47

2.    In accordance with TRCP 47(c)(5), Plaintiff seeks monetary relief in excess of $1,000,000.00.

### III. TRCP 194 Disclosures

3.    Defendants are advised that, pursuant to TRCP 194, each Defendant is required to produce information and materials described in Rule 194.2 within thirty (30) days after Defendant files its answer or enters an appearance in this matter.

-1-

## IV. PARTIES

4.    Plaintiff Jane Doe is a natural person and a resident of Austin, Texas.  Plaintiff is an adult female who files this lawsuit using this pseudonym to protect her privacy because she fears physical, psychological harm, and/or harassment if her name was publicly disclosed, as this lawsuit involves facts relating to her private mental health treatment and the legal viability of products sold in a multi-billion-dollar industry in the State of Texas.  Plaintiff's identity will be disclosed to Defendants on entry of an appropriate protective order from the Court allowing or directing disclosure only to Defendants, by which her identity is protected from widespread disclosure, dissemination, or public revelation. Any communications, notices, and responsive pleadings must be directed to her undersigned attorney of record.  For purposes of compliance with Tex. Civ. Prac. & Rem. Code § 30.014(a), the last three numbers of Plaintiff's New Hampshire Driver's License are 897, and the last three numbers of Plaintiff's Social Security Number are 734.

5.    Defendant Smoking Caterpillar is a registered assumed name of Gary James McCreight, an individual residing at 805 Sussex Drive, Austin, Travis County, Texas 78745. At all times relevant to and prior to accrual of this cause of action, Smoking Caterpillar is and was a brick-and-mortar retail establishment open to the public located at 512 Neches Street, Austin, Travis County, Texas.  Defendant Gary McCreight, d/b/a Smoking Caterpillar may be served with process at his residence located at 805 Sussex Drive, Austin, Texas, 78745, his office located at 3005 South Lamar Boulevard, Suite B107, Austin, Texas 78704, or wherever he may be found. Plaintiff requests issuance of citation for service on Defendant Smoking Caterpillar by a private process server.

6.    Defendant Fresh Farms E-Liquid, LLC (E-Liquid) is a limited liability company formed in California with its principal place of business located at 151 Kalmus Drive, L3, Costa

Mesa, CA. 92626. Defendant E-Liquid may be served with process by serving its registered agent

Anthony Devincentis at 151 Kalmus Drive, L3, Costa Mesa, CA. 92626. Plaintiff requests

issuance of citation for service on Defendant E-Liquid by a private process server.

## V. JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over both Defendants because each Defendant

has done business in the State of Texas prior to the accrual of this cause of action and each

continues to do business in the State of Texas, with extensive, ongoing contacts with the State of

Texas. For example and as described above, Smoking Caterpillar maintains and has at all times

maintained a for-profit physical retail store in Travis County, Texas selling products manufactured,

marketed, sold and distributed by Defendant E-Liquid and others. For its part, Defendant E-Liquid

sells, delivers, and distributes its products on a nationwide basis, including but not limited to the

State of Texas, Travis County, and the City of Austin.

8.      Plaintiff would further show that this Court has subject matter jurisdiction in this

case, as the amount in controversy exceeds the minimum jurisdictional limits of this Court.

9.      Venue is proper in Travis County, Texas, because all or a substantial part of the

events giving rise to these claims occurred in Travis County, Texas. See TEX. CIV. PRAC. & REM.

CODE § 15.002(a)(1). Further and/or alternatively, Defendant McCreight resided in Travis County,

Texas at the time this cause of action accrued. See TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2).

## VI. FACTS

10.      In 2019, the Texas Legislature passed House Bill 1325 (the Texas Farm Bill) which

mirrored the federal Farm Bill enacted in 2018. The Texas Farm Bill, signed into law in June 2019

authorized the production, manufacture, retail sale, transportation, and distribution of hemp. Hemp

and marijuana are alternative designations for the plant *Cannabis Sativa L.* Marijuana—the

possession, production, manufacture, sale, transportation, and distribution of which is illegal and unauthorized under federal and state law—has been and remains a controlled substance under federal and Texas law at all times relevant to this litigation.

11.    The key distinction between legal hemp and prohibited marijuana lies in the concentration of the active ingredient in the product known as Delta-9 tetrahydrocannabinol (THC).  THC is the psychoactive component of the cannabis plant that induces an intoxicating "high" or "stoned" sensation in the user. Under the Texas Farm Bill, permissible "hemp" is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis" when tested by a post-decarboxylation or similarly reliable method. By contrast, marijuana, its by-products, and derivates may contain total delta-9 THC concentrations in excess—often far in excess—of 0.3% on a dry weight basis after heating by smoking, baking, or vaping.

12.    In the aftermath of the Texas Farm Bill which legalized hemp—but left untouched the prohibition against marijuana—prosecution of marijuana offenses in Texas became complicated and difficult. Prior to 2019, crime laboratories testing suspected marijuana indicated whether the tested substance contained THC, and *any* detected THC rendered the substance illegal. Following the legalization of hemp, though, it became necessary to quantify the THC concentration in the tested substance as above or below the legal threshold of 0.3% set out in the Farm Bill.  Law enforcement mistakenly believe that quantitating the THC entails more complex and time-consuming forensic testing, requiring additional equipment, labor, staffing, and expense to establish the amount of THC in the tested samples. However, the real prosecutorial burden lies not in the testing but in the difficulty in explaining the technical distinctions between legal hemp

-4-

and prohibited marijuana to judges and lay juries to secure convictions. The new burden to establish the amount of total THC in suspected marijuana, rather than simply the presence of THC, prompted many Texas prosecutors to decline prosecution of suspected marijuana offenses due to the cost and delays required for quantitative testing.

13.    Unscrupulous actors quickly realized that branding prohibited products as legal "hemp"—coupled with the State's inability or unwillingness to prove otherwise—provided cover to openly possess, produce, manufacture, sell, transport, and distribute prohibited marijuana products, i.e. products with total THC concentrations in excess of 0.3% on a dry weight basis. These so-called "hemp" products initially trickled and have now flooded into the State marketplace since 2020.

14.    On or about August 16, 2024, Plaintiff Jane Doe entered the Smoking Caterpillar, a retail establishment at 512 Neches Street adjacent to the Sixth Street entertainment district, which consists primarily of bars, nightclubs, theaters, shops and restaurants. Smoking Caterpillar openly displayed and offered for retail sale scores of products branded as safe, innocuous, legal hemp or legal hemp-derived products. At Defendant Smoking Caterpillar, Plaintiff purchased one such product, a package of fifteen "Half Bak'd Primo Tropical Twist THCP" gummies[1] (the gummies) which had produced, manufactured, sold, transported, and/or delivered by Defendant E-Liquid.



---

[1] "Gummies" originally referred to gelatin-based chewable candies, e.g. Haribo Gummy Bears. Such gelatin-based sweetened "candies" may be infused with THC and are sold as "gummies."

15.     Neither Defendant provided any disclaimers of warranty that the gummies product marketed and sold in Smoking Caterpillar were a safe, ingestible product suitable for humans; rather, the packaging included a label claim that the product was "hemp-derived."

16.     Plaintiff consumed one of the gummies and shortly thereafter became incapacitated. She slept almost constantly for the next three days, conscious of waking only to get food and use the restroom.

17.     Over the next week after emerging from her 72-hour stupor, Plaintiff's mental condition deteriorated with increasingly distraught behavior and emotional instability. On or about August 26, her erratic behavior intensified such that a therapist was consulted, who suggested admission to an inpatient mental health facility. En route to the hospital in Austin, Plaintiff ran away from the car and suffered a psychotic breakdown, imagining bright lights and communications to her through the license plates of passing cars. Local peace officers assisted in apprehending and subduing Plaintiff, at which time she was transported to Seton Medical Center ER. Her condition was stabilized at Seton, and she was transported that night to Austin Oaks Hospital (Austin Oaks), an inpatient psychiatric facility in South Austin.

18.     Plaintiff was admitted to Austin Oaks where she spent the next eight days. Visitation by her family was completely denied during the first five days at this hospital. When her family finally was allowed to visit, her appearance and condition had deteriorated significantly. Plaintiff was medicated to the point of extreme sedation, emaciated, terrified, and traumatized, having been assaulted by another patient during her hospitalization.

19.     Plaintiff was discharged from Austin Oaks on or about September 3, 2024 to the care of her parents from New Hampshire. She was recommended to and did immediately consult her primary care physician for a telehealth visit with a follow-up appointment on or about

September 9. At her physician's direction, she discontinued an antipsychotic medication prescribed at Austin Oaks and anti-anxiety medication.

20.    Unfortunately, Plaintiff suffered a second acute psychotic episode on the evening of September 13, behaving inappropriately and erratically by, for example, escaping the house in bare feet in an effort to leave New Hampshire and return to Austin, attempting to drink water from a nearby pond, throwing a telephone in the pond, and similar actions. Approximately twelve hours into this psychotic episode, multiple law enforcement, firefighters, and EMS personnel again were summoned to the scene, but Plaintiff was beyond reasoning or linear, rational thought.  She ultimately was admitted for a second psychiatric hospitalization to treat her collapsing mental health.

21.    Plaintiff was then hospitalized at Wentworth Douglas Hospital in Dover, NH for three days, as there were no available beds at any mental health facility in the State.  On September 16 she was transported to Parkland Hospital Mental Health Unit in Derry, NH.  She remained at Parkland Hospital for a week.

22.    Following this hospitalization, Plaintiff returned home but continued to experience bouts of psychosis in October and November 2024, requiring further assistance of law enforcement and emergency medical personnel.  Over the course of these months, with regular psychiatric treatment and medication, Plaintiff improved to the point where she returned to Austin in early January 2025 and resumed working remotely with a modified job description later in January 2025.

23.    Before ingestion of this gummy in mid-August 2024, Plaintiff had never experienced any mental health issues and had never been diagnosed with any mental health condition.  Multiple healthcare providers asserted that the sudden onset of psychoses likely was induced by the ingestion of the gummy been produced, manufactured, and sold by Defendants.

24.    To determine the exact contents of what she ingested, Plaintiff commissioned testing of the Defendants' remaining gummy product in her possession. Based on this testing, Plaintiff has learned that the E-Liquid gummies sold by Smoking Caterpillar contained **no plant-based cannabinoids**; rather the only psychoactive component of the gummies was a *synthetic* cannabinoid, delta-9 tetrahydrocannabiphorol (THC-P).    **THC-P is a man-made artificial substance created in a laboratory from raw chemicals and is estimated to be more than thirty times (30x) more potent than THC.** On information and belief, the ingested gummy contained approximately 5mg of THC-P, or the psychoactive equivalent of up to 150 mg or more of THC. For comparison purposes, a recreational dose of THC in states allowing legal marijuana is usually 5 mg. Further, the packaging for this particular gummy advised the product was "10mg/pc." See *supra.*

25.    Defendants' manufacture, sale, and distribution of this gummy product as a safe, legal product "derived from industrial hemp" is particularly egregious. Rather than containing less than 0.3% THC derived from the cannabis plant, the gummy that Plaintiff ingested contained a synthetic, unnaturally high-powered cannabinoid fabricated in an industrial setting. Plaintiff asserts that packing this so-called gummy with high dosages of dangerous synthetic substances created in a lab rather than "derived from industrial hemp" is a dangerous bait and switch that cost Jane Doe four full months of her life and has resulted in lifelong impacts and reoccurring medical issues.

## VII.  CAUSES OF ACTION

### Texas Health & Safety Code Chapter 481

26.    Plaintiff realleges herein all prior paragraphs.

-8-

27.     The product at issue in this matter, Tropical Twisted gummies containing THC-P

are a controlled substance and/or alternatively, constitute a "controlled substance analogue" as

defined in TEX. HEALTH & SAFETY CODE (THSC) § 481.002(6). Under the THSC, Defendants are

liable for damages proximately caused by Plaintiff's consumption or ingestion of the gummy

because Defendants produced, distributed, sold, or provided the synthetic substance to Plaintiff

and/or aided in the production, distribution, sale, or provision of the synthetic substance to

Plaintiff. THSC § 481.1191(b).

28.     Both Defendants are jointly and severally liable for the entire amount of Plaintiff's

damages found by the jury. Id. at § 481.1191(d). Further, since Chapter 33 of the TEX. CIV. PRAC.

& REM. CODE does not apply to this action (see id. at (d)), none of the following doctrines,

defenses, practices, or concepts may be raised and do not apply to this cause of action:

> "contributory negligence," comparative fault, comparative causation, percentage of fault or any other similar theory or defense seeking to place responsibility on Plaintiff;

> limitation of any Defendant's liability based on percentage of responsibility;

> alleged responsibility or fault of any so-called "responsible third party;"

> contribution claims between Defendants (except contribution claims authorized by TEX. CIV. PRAC & REM. CODE chapter 32); or

> application, calculation, or claim of settlement credits for any amounts paid or promised to Plaintiff by any person or entity.

29.     An action brought under THSC § 481.1191 may include a claim for exemplary

damages, which Plaintiff seeks against both Defendants. Neither Defendant may avoid imposition

of exemplary damages because of the alleged criminal act of any other person or entity, and there

is no cap or limit on exemplary damages. Id. at § 481.1191(g)-(i).

## Strict Product Liability

30.    Plaintiff realleges herein all prior paragraphs.

31.    Plaintiff will show that both Defendants sold the gummy she ingested. Defendants are engaged in the business of selling this product. The product packaging was sealed at the time of Plaintiff's purchase, and it appeared that this seal was created by the manufacturer with the Defendants' expectation that the product would be delivered to consumers such as Plaintiff without substantial change in the condition from the initial packaging by the manufacturer until use by the consumer such as Plaintiff. Plaintiff asserts that the product did not undergo any substantial change in the condition of the product from initial manufacture through all sales prior to Plaintiff's consumption of the product. Plaintiff would further show that the product she purchased was adulterated, in that the gummy was defective and unsafe for human consumption.

## Design and/or Manufacturing Defect

32.    Plaintiff asserts that this product was unreasonably dangerous and/or defective when each Defendant relinquished control over the property and when Plaintiff acquired the property by purchase from Smoking Caterpillar. In that regard, Plaintiff would show that the use of the synthetic cannabinoid THC-P—which has a potency level that is orders of magnitude above hemp-based products—along with other defects were a proximate, producing and legal cause of damages for which Plaintiff sues.[2]

## Marketing Defect

33.    In the alternative, Plaintiff would show that the subject product suffered from a marketing defect, making the product unreasonably dangerous. Specifically, the product should

---

[2] Plaintiff cannot determine without discovery whether the product was intended to contain almost 5mg of this synthetic, high-strength psychoactive cannabinoid THC-P (design defect) or whether the dangerously, high concentration of THC was an unintentional, accidental result of a defect or deficiency in the manufacturing process (manufacturing defect).

have contained a warning that the product's psychoactive ingredient THC-P is up to 30 or more times potent than THC, with an attendant warning, instruction, or recommendation that the user consume only a tiny sliver of each gummy or the potential for an adverse reaction should the suggested dosage be ingested. This and other marketing defects were proximate, producing, and legal causes of Plaintiff's damages for which she sues.

## Negligence

34.    Plaintiff realleges all prior paragraphs.

35.    Plaintiff asserts both Defendants have a duty to refrain from selling dangerous or adulterated products with a propensity to cause damages such as those suffered by Plaintiff after her ingestion of the Tropical Twist gummies. Further Defendants have a duty to warn end users of these products about dangers inherent in products that are known or should be known to the manufacturer and are not readily apparent to the end user. Defendants should have warned Plaintiff and persons similarly situated that the psychoactive component of these gummies, the THC-P, is 30x or more powerful than ordinary THC and that such a product is neither safe nor innocuous. Both Defendants have a common-law duty to refrain from manufacturing, selling, or distributing this dangerous product. Both Defendants breached these common-law duties, which breaches are a proximate cause of the Plaintiff's damages sustained and for which she seeks recovery.

## Gross Negligence

36.    Plaintiff would show that her damages and injuries resulted from Defendants' gross negligence, as that term is employed and understood in Texas law.  Each Defendant's acts and omissions, when viewed objectively from Defendant's standpoint at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm and of which each Defendant had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others such as Plaintiff.  As such, Plaintiff seeks recovery of exemplary damages from each Defendant.

## Damages

36.    Defendants' conduct as outlined above and to be shown at trial are the direct, proximate, producing, legal and cause in fact of substantial damages sustained by the Plaintiff, including but not limited to:

    a.    Past and future reasonable and necessary medical care;
    b.    Past and future loss of wages or wage-earning capacity;
    c.    Past and future physical impairment;
    d.    Past and future physical pain, suffering and mental anguish;
    e.    Past and future disfigurement.

37.    Plaintiff also seeks recovery of exemplary damages to be determined by the trier of fact.

38.    Plaintiff seeks recovery of pre-judgment and post-judgment interest in the maximum amount allowed by law.

39.    Plaintiff seeks a jury trial and hereby tenders the requisite fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that each Defendant be cited to appear and, upon final trial hereof, Plaintiff recover judgment against Defendants for:

1. Her damages found by the jury within the jurisdictional limit of the Court;
2. Exemplary damages;
3. Pre-judgment and post-judgment interest as authorized by law and the Court; and
4. Taxable court costs and litigation expenses; and all writs and processes necessary to secure collection of the judgment.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
4700 Mueller Blvd, Suite 200
Austin, Texas 78723
512/476-4600
512/476-5382 (Fax)

By:_____
Heidi A. Coughlin
hcoughlin@w-g.com
State Bar No. 24059615
Brantley Ross Pringle, Jr.
rpringle@w-g.com
State Bar No. 16330001

**ATTORNEYS FOR PLAINTIFF**

-13-

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Lizz Gobellan on behalf of Heidi Coughlin
Bar No. 24059615
lgobellan@w-g.com
Envelope ID: 101933179
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 6/12/2025 3:42 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brantley RossPringle, Jr. | | rpringle@w-g.com | 6/12/2025 10:39:40 AM | SENT |

THE **LAWYER REFERRAL SERVICE** OF CENTRAL TEXAS
A Non-Profit Corporation

# IF YOU NEED A LAWYER
# AND DON'T KNOW ONE,
# THE LAWYER REFERRAL SERVICE
# CAN HELP

## 512-472-8303
### 866-303-8303 (toll free)
### www.AustinLRS.com

**Weekdays 8:00 am to 4:30 pm**
**$20.00 for first half hour attorney consultation**
**(free consultations for personal injury, malpractice, worker's compensation,**
**bankruptcy, and social security disability)**

This service is certified as a lawyer referral service as required by the State of Texas
under Chapter 952, Occupations Code. Certificate No. 9303

# SI USTED NECESITA EL CONSEJO DE UN
# ABOGADO Y NO CONOCE A NINGUNO
# PUEDE LLAMAR
# A LA REFERENCIA DE ABOGADOS

## 512-472-8303
### 866-303-8303 (llame gratis)
### www.AustinLRS.com

**Abierto de lunes a viernes de 8:00 am-4:30 pm**
**$20.00 por la primera media hora de consulta con un abogado**
**(la consulta es gratis si se trata de daño personal, negligencia,**
**indemnización al trabajador, bancarrota o por incapacidad del Seguro Social)**

This service is certified as a lawyer referral service as required by the State of Texas
under Chapter 952, Occupations Code. Certificate No. 9303