## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:25-CV-01126-ADA** |
| | § | |
| **FRESH FARMS E-LIQUID, LLC,** | § | |
| **GARY MCCREIGHT,** | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ALAN D. ALBRIGHT
      UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Jane Doe's first and second motions to remand, Dkts. 8; 13, and all related briefing. After reviewing the filings and the relevant law, the undersigned recommends that the District Judge grant Doe's second motion to remand, Dkt. 13, and deny Doe's first motion to remand, Dkt. 8, as moot.

## I.      BACKGROUND

In August 2024, Doe consumed a hemp gummy she purchased from Defendant Gary McCreight's store, the Smoking Caterpillar. Dkt. 1-4, at 7. As a result, Doe became incapacitated, experienced a "psychotic breakdown," and was ultimately admitted to an inpatient mental health facility in Austin, Texas. *Id.* at 8. The facility discharged Doe to her parents, who cared for her in New Hampshire. *Id.* at 9. While in New Hampshire, Doe suffered another "acute psychotic episode" and was hospitalized. *Id.* After that episode, back at her parents' home, Doe continued to

1

experience periods of psychosis for about two months. *Id.* Doe ultimately returned to her home in Austin in January 2025. *Id.* She continues to experience "reoccurring medical issues." *Id.* at 10.

Doe alleges that the sudden onset of psychoses resulted from her ingestion of the gummy. *Id.* at 9. Doe's commissioned tests revealed that the gummy—sold by McCreight and manufactured by Defendant Fresh Farms E-Liquid, LLC ("Fresh Farms," and together with McCreight, "Defendants")—contained no plant-based cannabinoids, but rather synthetic delta-9 tetrahydrocannabiphorol ("THC-P"). *Id.* at 10. Doe alleges that THC-P is "estimated to be more than thirty times (30x) more potent than THC." *Id.* Based on their production and sale of the gummy, Doe sued Defendants in state court, alleging violations of the Texas Health and Safety Code as well as strict product liability, design and/or manufacturing defect, marketing defect, negligence, and gross negligence. *Id.* at 10-14.

Fresh Farms initially removed the case to this Court based on diversity jurisdiction and "snap removal," arguing that Doe is a citizen of Texas or New Hampshire, Fresh Farms is a citizen of California, and McCreight's citizenship was both unknown and irrelevant because he had not been served at the time of removal. Dkt. 1, at 2-3 (citing *Tex. Brine Co. LLC v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("A non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state.")). Doe moved to remand, arguing generally that

Defendants misstated the Fifth Circuit's holding in *Texas Brine* and the Circuit's "snap removal" jurisprudence. Dkt. 8.

Fresh Farms then filed an amended notice of removal, asserting that federal jurisdiction is proper based on *both* diversity jurisdiction and federal-question jurisdiction. Dkt. 9, at 2-4. Fresh Farms' contentions with respect to diversity jurisdiction are largely the same as in its first notice of removal, except that Fresh Farms amends its notice to state that Doe is a citizen of New Hampshire, not Texas. *See* Dkts. 1; 9. With respect to federal-question jurisdiction, Fresh Farms argues that the case presents substantial questions of federal law: first, the question "whether THC-P falls within the federal controlled substance schedules" will be at issue in this case and second, the applicability of Chapter 481 of the Texas Health and Safety Code "hinges on a number of findings" that implicate federal statutes. *Id.* at 4 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (holding that federal-question jurisdiction exists when the federal issue is "(1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress")); *see* Tex. Health & Safety Code § 481.1191. Doe again moved to remand on the grounds that her case raises no substantial question of federal law, complete diversity does not exist, and snap removal is improper. Dkt. 13, at 5-16.

## II.    LEGAL STANDARDS

Federal courts are courts of limited jurisdiction possessing "only that power authorized by Constitution and statute." *Gunn*, 568 U.S. at 256 (quoting *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A defendant may remove a civil case brought in state court to the federal district court in which the case could have been brought if the district court would have original jurisdiction. 28 U.S.C. § 1441(a). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377). Any ambiguities should be strictly construed in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

A case may be removed pursuant to 28 U.S.C. § 1332 if there is "complete diversity" of citizenship and the amount in controversy is greater than $75,000 exclusive of interests and costs. *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). To allege "complete diversity" in the removal context, a defendant must show that "all persons on one side of the controversy [are] citizens of different states than all persons on the other side." *SXSW, LLC v. Fed. Ins. Co.*, 83 F.4th 405, 407-08 (5th Cir. 2023). A case may also be removed under 28 U.S.C. § 1331 if it presents a federal question, meaning that the question presented "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Generally, removal jurisdiction should be determined based on the state-court complaint at the time of removal. *Valdez v. State Farm Mut. Auto. Ins. Co.*, No. 1:23-cv-476-RP, 2023 WL 3721203, at *1 (W.D. Tex. May 30, 2023) (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). However, "courts may consider information submitted after removal if it clarifies the jurisdictional

facts as they existed at the time of removal." *Edwards v. Mathews*, No. 3:23-CV-0857-B, 2023 WL 4424268, at *3 n.4 (N.D. Tex. July 10, 2023) (citing *Cavallini*, 44 F.3d at 265).

## III.    DISCUSSION

### A.    The Court does not have federal-question jurisdiction over this case.

As stated above, a case may be removed pursuant to 28 U.S.C. § 1331 if it presents a federal question, meaning that the question "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, under the well-pleaded complaint rule, a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (cleaned up). However, under the *Grable* doctrine, in a "'special and small category of cases,'" a cause of action created by state law can support a civil action arising under federal law if the federal issue is "(1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Fresh Farms argues that the *Grable* doctrine applies in this case and the Court may accordingly exercise federal-question jurisdiction. The undersigned disagrees. To begin, all of Doe's causes of action are based in state law. *See* Dkt. 1-4. Accordingly, unless Fresh Farms can show that Doe's case falls within the *Grable* exception, the

Court's exercise of jurisdiction is improper. *See Grable*, 545 U.S. at 314; *see also Gunn*, 568 U.S. at 258. In her second motion to remand, Doe primarily argues that Fresh Farms fails to invoke federal-question jurisdiction because this case involves no "substantial question of federal law" and accordingly fails the *Grable* test. Dkt. 13, at 5-9; *see Grable*, 545 U.S. at 314 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). Fresh Farms responds by explaining that resolution of Doe's case—in particular, her claim under the Texas Health and Safety Code—will require construing federal law. *See* Dkt. 16, at 1.

At a high level, Fresh Farms argues that because the state-level schedules require a determination whether THC-P falls within the federal schedules, this case presents a federal question under *Grable. See id.*; Dkt. 9, at 3. Fresh Farms' logical "matryoshka doll" is this: Doe claims that Defendants have violated section 481.1191 of the Texas Health and Safety Code, which could make them liable for damages for producing, distributing, selling, or providing the gummy to Doe. Dkt. 1-4, at 11; *see* Dkt. 16, at 4. Section 481.1191 provides that a "person is liable for damages proximately caused by the consumption or ingestion of a **synthetic substance** by another person" if the person "produced, distributed, sold, or provided the synthetic substance to the other person." Tex. Health & Safety Code § 481.1191(b)(1). Therefore, to be held liable for violation of section 481.1191, Doe must show that the THC-P found in the gummy falls within the definition of a "synthetic substance." *Id.*

Section 481.1191, in turn, defines "synthetic substance" as "an artificial substance that produces and is intended by the manufacturer to produce when consumed or ingested an effect similar to or in excess of the effect produced by the consumption or ingestion of a **controlled substance** or **controlled substance analogue**, as those terms are defined by [Texas Health and Safety Code] Section 481.002." *Id.* § (a)(2). Because THC-P is not a controlled substance,[1] Doe must show that it produces an effect "similar to or in excess of the effect produced by … a **controlled substance analogue**." *Id.* A "controlled substance analogue" is either (a) a substance with a chemical structure substantially similar to the chemical structure of a controlled substance in [Texas'] Schedule I or II or Penalty Group 1, 1-A, 1-B, 2, or 2-A ("state-level schedules") of the Texas Controlled Substances Act ("TCSA"[2]); or (b) a substance specifically designed to produce an effect substantially similar to, or greater than, the effect of a controlled substance in the state-level schedules. *Id.* § (6)(A), (B).

According to Fresh Farms, those state-level schedules are statutorily required to conform to the federal schedules. Dkt. 9, at 3 (citing Tex. Health & Safety Code § 481.034(g) ("[I]f a substance is designated, rescheduled, or deleted as a controlled substance under federal law … the commissioner similarly shall control the substance under this chapter."). The state-level schedules thus "incorporate the

---

[1] A controlled substance is a substance listed in Schedules I through V or Penalty Group 1, 1-A, 1-B, 2, 2-A, 3, or 4 of the Texas Controlled Substances Act ("TCSA"). Tex Health & Safety Code § 481.002(5). The parties appear to agree that THC-P is not a "controlled substance." *See* Dkts. 13, at 7; 16, at 2.

[2] The TCSA is codified at Chapter 481 of the Texas Health and Safety Code.

[Federal Controlled Substances Act] by reference." Dkt. 16, at 3. The state-level schedules *exclude* hemp. Tex. Health & Safety Code Ch. 481, Subch. B, App'x A §§ 23, 31. Fresh Farms essentially argues that because the state-level schedules (a) are required to conform to federal schedules and (b) exclude hemp, the Court will necessarily have to ask whether the gummy is a "controlled substance analogue" in relation to the controlled substances on the federal schedules. So, if the gummy is a "controlled substance analogue" to the *federal* definition of hemp, it may be a controlled substance analogue as required to establish liability under the Texas Health and Safety Code. If it is not an analogue to the federal definition of hemp, Doe has no claim under that Code.

In reply, Doe points out that the Texas Health and Safety Code defines "controlled substance" as excluding *only* hemp or its tetrahydrocannabinols as defined in section 121.001 of the Texas Agriculture Code. Dkt. 18, at 3; Tex. Health & Safety Code § 481.002(5). Under the Texas Agricultural Code, "hemp" is

> the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

Tex. Agric. Code § 121.001. According to Doe, this narrow definition of hemp excludes as a controlled substance only the "trace" amounts of tetrahydrocannabinols found in that category of hemp products that are legal under Texas law. *See* Dkt. 18, at 3. The TCSA *does* include "marihuana" and tetrahydrocannabinols except those in hemp as Schedule I hallucinogens. Tex. Health & Safety Code Ch. 481, Subch. B, App'x A §§ 23, 31, 58.

Doe alleges that "[r]ather than containing less than 0.3% THC derived from the cannabis plant, the gummy [she] ingested contained a synthetic, unnaturally high-powered cannabinoid." Dkt. 1-4, at 10. Because, Doe argues, the THC-P gummy she consumed therefore falls outside the definition of "hemp" under the Texas Agriculture Code, it is a controlled substance analogue—meaning it was designed to produce an effect substantially similar to or greater than the effect of "marihuana" and non-hemp tetrahydrocannabinols. Dkt. 18, at 5. It is also therefore a "synthetic substance" under Texas law. *Id.* And because the gummy is a synthetic substance under the Texas Health and Safety Code, federal law is not "necessarily raised" by her suit. *Id.*; *see Gunn*, 568 U.S. at 258.

The undersigned agrees with Doe that a federal issue is not "necessarily raised" in her suit. Doe may raise and rely on the argument that the gummy she ingested is a "controlled substance analogue" to marihuana or its tetrahydrocannabinols. *Cf. Fire & Police Retiree Health Care Fund v. CVS Health Corp.*, No. 4:19-CV-02089, 2019 WL 13191642, at *4 (S.D. Tex. July 24, 2019) (finding that a federal issue is not "necessarily raised" when a plaintiff may choose to rely on non-federal law). She need not and does not argue that the gummy is an analogue to hemp as defined under the Texas Agriculture Code or federal law. In fact, Doe alleges that the product was improperly marketed and sold as hemp containing THC concentrations of not more than 0.3%. Dkt. 1-4, at 7 (describing how "unscrupulous actors" have flooded the market with products containing higher THC concentrations under the auspices that the products are "hemp" as defined under Texas law), 12-13

(arguing the product should have contained a warning regarding its psychoactive ingredient, THC-P, which is more potent than THC contained in hemp). Because Doe does not argue that the gummy is an analogue to hemp as defined under Texas law, the Court need not answer the question of whether the federal schedules include hemp where Texas law does not.

Moreover, the fact that the TCSA "incorporates by reference" the federal schedules does not mean that a federal issue is "necessarily raised" in this lawsuit. In *Fire & Police*, the court found that a federal issue was not "necessarily raised" where the Texas code provisions at issue in that case incorporated by reference relevant sections of the federal code but also imposed additional duties on the defendant. 2019 WL 13191642, at *5. While the issue in that case mainly concerned whether state law imposed *any* duties on the defendant independent of federal law, relevant here, the court declined to find that a federal issue was raised based on the incorporation of federal standards into the Texas code. *See id.* at *4-5. The court also rejected any argument that a federal issue was raised because the Texas code did not "*independently*" create the duties at issue, given that the state law adopted or referred to a federal standard. *Id.* at *5. The court noted, "[t]he rules imposed by the Texas Health and Safety Code and the Texas Administrative Code, whatever the content of those rules may be, are not federal law." *Id.* The undersigned reaches the same conclusion here. The Texas Health and Safety Code is not federal law. And Fresh Farms cannot rely on the fact that the Texas Health and Safety Code incorporates provisions of federal law to argue that a federal issue is "necessarily raised."

Further, even if a federal issue were "necessarily raised," the undersigned is skeptical that the federal question would be "substantial" as required under *Grable*. Case law makes clear that the focus of the *Grable* inquiry is not on the "interests of the litigants themselves, but rather on the broader significance of the [] question for the Federal Government." *Gunn*, 568 U.S. at 260. *Grable* itself concerned federally imposed notice requirements preceding the sale of property to satisfy federal tax delinquency. 545 U.S. at 310-11. In holding that the case raised an important issue of federal law, the Supreme Court emphasized the federal government's interest in the collection of delinquent taxes. *Id.* at 315. By contrast, in *Gunn*, the Supreme Court concluded that a legal malpractice claim involving an alleged error in a patent case did not raise a significant issue of federal law because the patent question was "posed in a merely hypothetical sense" and allowing the state court to resolve the case would not undermine or be controlling as to federal patent law. 568 U.S. at 261-62.

The undersigned finds that this case is more like *Gunn* than *Grable*. It is difficult to discern how the federal government has any substantial interest in resolving whether Fresh Farms has violated Texas law regarding controlled substances, regardless of the fact that Texas law incorporates parts of federal law on the same subject. *See Grable*, 545 U.S. at 315. As explained above, the issue of whether THC-P is hemp under federal law will not necessarily arise. But even if it did, as in *Gunn*, a Texas court's decision on whether THC-P is hemp under federal law will have no controlling effect on federal courts or courts in other states. *See Gunn*, 568 U.S. at 261-62. Accordingly, Fresh Farms has not shown that jurisdiction

is proper under *Grable*. This case does not raise a federal question, and the Court may not exercise subject-matter jurisdiction under 28 U.S.C. § 1331.

> **B.    The Court may not exercise diversity jurisdiction over this case.**

The Court does not have diversity jurisdiction over Doe's case. Doe argues in her second motion to remand that diversity jurisdiction is improper because she and McCreight are domiciled in Texas and "snap removal" is inapplicable when there is no complete diversity. Dkt. 13, at 10-16. Fresh Farms responds that complete diversity exists because Doe has not met her burden to show that she changed her domicile to Texas and snap removal was therefore proper. Dkt. 16, at 6-11 (citing *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (stating that while the "ultimate burden on the issue of jurisdiction rests with the … party invoking federal jurisdiction," "the party attempting to show a change [of domicile] assumes the burden of going forward on that issue")).

"Snap removal" refers to removal before service on all defendants. *Tex. Brine*, 955 F.3d at 485. As described above, under 28 U.S.C. § 1441(a), a defendant may remove a civil case brought in state court to the federal district court in which the case could have been brought. But when a defendant seeks to remove a case based on diversity, it must also satisfy the forum-defendant rule, which provides,

> [a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2); *Tex. Brine*, 955 F.3d at 485. The Fifth Circuit countenanced snap-removal in *Texas Brine*, finding that the forum-defendant rule does not apply

12

when no forum-resident defendant has been properly "joined and served" at the time of removal. *Tex. Brine*, 955 F.3d at 486 (analyzing the text of 28 U.S.C. § 1441(b)(2)). Thus, it was proper for a New York defendant to remove a case brought by a Texas plaintiff from a state court in Louisiana because the two other defendants—who were Louisiana residents—had not yet been served. *Id.* at 485-86. The Circuit also noted that because there was complete diversity, no jurisdictional defect precluded removal pursuant to 28 U.S.C. § 1332(a). *Id.* at 485.

The Fifth Circuit clarified the limits of snap removal in *In re Levy*, 52 F.4th 244 (5th Cir. 2022). There, the Louisiana plaintiff sued an individual Louisiana defendant, a Louisiana LLC, and a diverse defendant, Zurich American Insurance Company ("Zurich"). *Levy*, 52 F.4th at 245-46. Zurich removed the case to federal court before any other defendant had been served, stating that removal was proper based on the forum-defendant rule. *Id.* at 246. The Fifth Circuit disagreed, pointing out that removal under § 1441(b)(2) is "permissible only if complete diversity exists among all *named* parties." *Id.* at 246. It also noted that "snap removal" was permissible in *Texas Brine* only because the parties in that suit were completely diverse, stating that snap removal "cannot confer jurisdiction where jurisdiction does not exist." *Id.* at 247. Because there was not complete diversity in *Levy*, the court held that the case should be remanded. *Id.* at 247.

Given that snap removal is available only when there is complete diversity, whether removal was proper in this case depends on whether Doe, like McCreight, is a citizen of Texas. As mentioned, Doe provides an affidavit attesting that she is

13

domiciled in Texas. Dkt. 18-1, at 3. Fresh Farms asserts that contrary to Doe's testimony, she has not met her burden to show she is a Texas domiciliary. Dkt. 16, at 6-9.

An individual's citizenship is determined by the state of domicile; residence in a state alone is insufficient. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797-98 (5th Cir. 2007). To demonstrate domicile, a party must show residence and the intention to remain. *Id.* But while "[a] litigant's statement of intent is relevant to the determination of domicile, … it is entitled to little weight if it conflicts with the objective facts." *Coury*, 85 F.3d at 251. Therefore, in determining a litigant's domicile, courts should "'look to all evidence shedding light on the litigant's intention to establish domicile.'" *Veranda Assocs., LP v. Hooper*, 496 F. App'x 455, 457 (5th Cir. 2012) (quoting *Coury*, 85 F.3d at 251). Courts should also address a variety of factors, including the places where the litigant (1) exercises civil and political rights, (2) pays taxes, (3) owns real and personal property, (4) has driver's and other licenses, (5) maintains bank accounts, (6) belongs to clubs and churches, (7) has places of business or employment, and (8) maintains a home. *Id.* "'No single factor is determinative.'" *Id.* (quoting *Coury*, 85 F.3d at 251). Domicile is only changed when the party takes up residence in a different state with the intent to remain there permanently. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).

Doe attested in her declaration that she moved to Texas in late August or early September 2023. Dkt. 18-1, at 2. She has maintained her residence continually in Texas since then, including during the time her parents cared for her in New

Hampshire. *Id.* Doe adds that she lives with a long-term romantic partner in Texas, and though she has not obtained a Texas driver's license or registered to vote in Texas, she identified herself as a Texas resident on her 2024 tax return. *Id.* at 3. She states that she has "no intention of ever returning to New Hampshire to live and work" and that her "plan for the indefinite future is to continue to live and work in Texas." *Id.* Fresh Farms seizes on a handful of facts to argue that Doe is not a Texas domiciliary: that Doe does not argue she has paid taxes to the state of Texas, claims to work remotely, has not obtained a Texas driver's license, is not registered to vote in Texas, has not lived in Texas for more than a single year at a time, and returned to New Hampshire for medical care. Dkt. 16, at 8-9. The undersigned finds that on balance, none of these facts outweighs Doe's own testimony that she lives and intends to remain in Texas. *See* Dkt. 18-1.

First, the undersigned notes that Doe's statement of her residence and intent to remain in Texas as contained in her sealed, unredacted declaration is competent evidence and plainly relevant to the Court's determination of her domicile. *See* Dkts. 16, at 7 (arguing that because Doe's declaration was unsigned, it could not be competent evidence of her domicile); 18, at 6-7 (noting the parties' agreement regarding Doe's filing of a sealed, unredacted version of the declaration); *see* 28 U.S.C. § 1746. The declaration shows that Doe left New Hampshire, took up residence in Texas, and intends to remain there permanently, as required to show change of domicile. Dkt. 18-1; *see Mas*, 489 F.2d 1399. Fresh Farms' argument that Doe is not domiciled in Texas because she has not spent more than one year in Texas, Dkt. 18,

at 9, is unavailing since "the length of time spent in the new place is *not* a factor." *Allen v. Pittman*, No. 1:18-CV-00632-LY, 2018 WL 6790648, at *3 (W.D. Tex. Nov. 1, 2018), *R. & R. adopted*, 2018 WL 6795963 (W.D. Tex. Nov. 19, 2018). Rather, "'once presence in the new state and intent to remain are met, the new domicile is instantaneously established.'" *Id.* (quoting *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 1974)).

Next, Doe's testimony that she resides in and intends to remain in Texas does not conflict with the objective facts such that it should be discarded. In fact, several of the *Coury* factors point to Doe's domicile in Texas. Doe works from[3] and maintains a home in Texas. Dkt. 18-1, at 2-3. Presumably, Doe also owns personal property in Texas because she maintains a residence here. *See id.* Though Doe does not state that she pays taxes to the state of Texas, the record does not show that Doe owns any property in Texas, and the fact that she identified herself on her federal tax forms as a resident of Texas also weighs in favor of a finding that she is a Texas domiciliary. *See id.* Neither party presents any evidence as to where Doe maintains bank accounts or belongs to clubs and churches.

The facts that Doe maintains a New Hampshire driver's license and voter registration weigh against a finding that she is a Texas domiciliary, but the effect of these factors is not so strong as Fresh Farms advocates. For one, "there is no

---

[3] As for Fresh Farms' suggestion that Doe does not work in Texas because she works remotely, it is unclear from Doe's declaration when she began working remotely—before or after the alleged events leading to this suit. Dkt. 16, at 8; *see* Dkt. 1-4, at 9 (stating that Doe returned to Austin and "resumed working remotely" in January 2025). Regardless, Fresh Farms has not pointed to any authority holding that remote work from Texas does not qualify as employment in Texas for purposes of weighing the *Coury* factors.

requirement to sever all ties with the previous domicile when establishing a new domicile." *Allen*, 2018 WL 6790648, at *3. The undersigned suspects that many new college graduates, upon moving to a new state, neglect to officially apply for a new driver's license or voter registration for some time. The fact that Doe's driver's license and voter registration still reflect a New Hampshire address do not outweigh her own statements that she resides in and plans to stay in Texas. Neither does Doe's choice to return to New Hampshire for medical care. The fact that Doe's parents continue to reside in New Hampshire is, of course, of no consequence to Doe's own domicile. Nor could Doe be expected to sever that tie. *See Allen*, 2018 WL 6790648, at *3. Further, it is unsurprising that Doe, a 24-year-old who alleges that she suffered multiple bouts of severe psychosis, would take advantage of that care when offered. Dkt. 18-1, at 2. The fact that Doe returned to seek care from her parents in New Hampshire does not negate her statements that she has since returned to, resides in, and intends to remain indefinitely in Texas. *See* Dkt. 18-1.

For these reasons, the undersigned concludes that Doe is a domiciliary of Texas. As such, there is not complete diversity between Doe and McCreight, who is also a Texas domiciliary.[4] *SXSW*, 83 F.4th at 407-08. Because there is no complete diversity, the Court may not exercise diversity jurisdiction over this case, and snap removal was improper. 28 U.S.C. § 1332; *Levy*, 52 F.4th at 246; *see* Dkt. 16, at 11 (noting that Doe's argument that *Levy* requires remand would be well-taken if Doe could show she changed her domicile to Texas).

---

[4] Fresh Farms does not dispute that McCreight is domiciled in Texas. *See* Dkt. 16.

\*       \*       \*

Because the Court may not exercise subject-matter jurisdiction over this case based on either federal-question or diversity jurisdiction, Doe's amended motion to remand, Dkt. 13, should be granted.

## IV.    RECOMMENDATION

In accordance with the above discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Doe's amended motion to remand, Dkt. 13.

The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY** Doe's original motion to remand, Dkt. 8, as **MOOT**.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED November 13, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE